IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FLORENCE MCCRAY,                         No.  CIV.S-04-1178 DAD

      Plaintiff,

  v.                                      ORDER

JO ANNE B. BARNHART,
Commissioner of Social
Security,

      Defendant.
_____/

      This social security action was submitted to the court, without oral argument, for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.  For the reasons explained below, the decision of the Commissioner of Social Security ("Commissioner") is affirmed.

**PROCEDURAL BACKGROUND**

      Plaintiff Florence E. McCray applied for Disability Insurance Benefits under Title II of the Social Security Act (the "Act").  (Transcript ("Tr.") at 46-50.)  The Commissioner denied

1

plaintiff's application initially and on reconsideration. (Tr. at 28-31, 34-37.) Pursuant to plaintiff's request, a hearing was held before an administrative law judge ("ALJ") on September 10, 2003, at which time plaintiff was represented by counsel. (Tr. at 302-33.) In a decision issued on October 22, 2003, the ALJ determined that plaintiff was not disabled. (Tr. at 11-18.) The ALJ entered the following findings:

> 1. The claimant met the disability insured status requirements of the Act on December 14, 2001, and continues to meet them through the date of this decision.
>
> 2. The claimant has not engaged in substantial gainful activity since December 14, 2001.
>
> 3. The medical evidence establishes that the claimant has severe fibromyalgia, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.
>
> 4. The claimant's testimony is not substantially credible for the reasons stated in the body of this decision.
>
> 5. The claimant has the residual functional capacity to perform the requirements of work except for performing prolonged lifting in excess of 20 pounds, occasional lifting of more than 40 pounds, and repetitive power grasping, squatting, kneeling and climbing (20 CFR 404.1545).
>
> 6. The claimant has the residual functional capacity to perform medium work eroded by lifting, postural and hand use limitations (20 CFR 404.1567).

/////

2

       7.    The vocational expert credibly testified that the claimant is able to perform her past relevant work as a telecommunications clerical aide, administrative assistant, customer service representative and staff associate.

       8.    The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 404.1520(f).

(Tr. at 17.) The Appeals Council declined review of the ALJ's decision on May 10, 2004. (Tr. at 5-8.) Plaintiff then sought judicial review, pursuant to 42 U.S.C. § 405(g), by filing the complaint in this action on June 21, 2004.

**LEGAL STANDARD**

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Morgan, 169 F.3d at 599; Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that

3

detracts from the ALJ's conclusion.  See Jones, 760 F.2d at 995.  The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920.  See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  This five-step process can be summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is conclusively presumed disabled.  If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

/////

```
            Step five: Does the claimant have the residual
            functional capacity to perform any other work?
            If so, the claimant is not disabled.  If not, the
            claimant is disabled.
```

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).  The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Yuckert, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff advances four arguments in her motion for summary judgment.  First, plaintiff asserts that the ALJ erred in his treatment of the opinions of plaintiff's treating physicians. Second, plaintiff maintains that the ALJ ignored the requirements of Social Security Ruling No. 99-2p in considering plaintiff's fibromyalgia.  Third, plaintiff contends that the ALJ failed to adequately consider all of plaintiff's nonexertional limitations. Fourth, plaintiff argues that the ALJ erred in discounting the testimony of plaintiff regarding the severity of her symptoms and the resulting limitations those symptoms place upon her.  The court addresses plaintiff's arguments below.

Beginning with plaintiff's first argument, it is well-established that the medical opinion of a treating physician is entitled to special weight.  See Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989); Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988). "As a general rule, more weight should be given to the opinion of a

treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830 (citing Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)). "At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." Id. (citing Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)). "Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Id. (citing Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)).

Here, plaintiff asserts that the ALJ gave inadequate weight to the Fibromyalgia Residual Functional Capacity Questionnaire completed on September 4, 2003, by Michael T. Barger, M.D., one of plaintiff's treating physicians. (Tr. at 291-97.) Dr. Barger assessed numerous severe limitations with respect to plaintiff's ability to function mentally and physically. (Id.) However, the ALJ articulated several specific reasons in not crediting Dr. Barger's report. Specifically, the ALJ stated that Dr. Barger's assessment lack credibility because:

> (1) It is at odds with the assessment from the consultative neurologist. (2) Chart notes from Dr. Barger indicated that he only treated the claimant occasionally and that she felt better with medications. (3) It appears to have been based upon the claimant's self-serving subjective statements. (4) The doctor's supporting progress notes do not contain significantly abnormal objective clinical findings. (5) The doctor's findings are not corroborated by treatment records from other medical sources. (6) The

6

|   |   |
|---|---|
| 1 | doctor's assessment is not consistent with the claimant's wide ranging activities of daily living. |
| 2 | |
| 3 | (Tr. at 16.) |
| 4 | Having carefully considered the administrative record, the |
| 5 | court finds that the ALJ properly discredited the assessment of Dr. |
| 6 | Barger based on the specific and legitimate reasons cited which are |
| 7 | supported by substantial evidence in the record. |
| 8 | The same can be said with respect to the Certification of |
| 9 | Health Care Provider forms completed in August, September and |
| 10 | December of 2000 and January of 2001 by David I. Rohrdanz, M.D., |
| 11 | plaintiff's other treating physician.  (Tr. at 111-14.)  Plaintiff |
| 12 | points out that the ALJ failed to specifically mention these forms in |
| 13 | his decision.  However, an ALJ is not required to expressly mention |
| 14 | each and every medical document within the administrative record. |
| 15 | See Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984)("The |
| 16 | Secretary, however, need not discuss *all* evidence presented to her. |
| 17 | Rather, she must explain why "significant probative evidence has been |
| 18 | rejected.").  Further, the treatment notes of Dr. Rohrdanz in the |
| 19 | record, which the ALJ generally addressed along with the treatment |
| 20 | notes of Dr. Barger, simply do not indicate that plaintiff is so |
| 21 | functionally limited as to be precluded from all work activity.  (Tr. |
| 22 | at 243-90.) |
| 23 | In his decision, the ALJ explained that the opinion of |
| 24 | examining neurologist Steve McIntire, M.D. indicates that plaintiff |
| 25 | is capable of the physical demands of work.  (Tr. at 199-204.) |
| 26 | Indeed, taken alone the opinion of Dr. McIntire, who independently |

7

examined plaintiff, is substantial evidence supporting the ALJ's decision. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995)("Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence[.]").

Finally, while the ALJ did not specifically mention the certification forms completed by Dr. Rohrdanz, there was not a great deal to say about the forms which apparently were completed at a time when plaintiff was employed by Pacific Bell.  Those forms completed by Dr. Rohrdanz, simply indicate that plaintiff was "ill and incapacitated" due to "fibromyalgia" and "bursitis" for purposes of the Family and Medical Leave Act of 1993 during the months and days indicated.  (Tr. at 111-14.)  The forms do not address any period of time beyond January of 2001 and contain no specific discussion of plaintiff's functional abilities that might be instructive in the social security context.

For these reasons, the court finds that the ALJ properly discounted the certification forms of Dr. Rohrdanz based on specific and legitimate reasons supported by substantial evidence in the record.

Plaintiff's next argument is that the ALJ failed to comply with the requirements of Social Security Ruling No. 99-2p ("SSR 99-2p") in assessing plaintiff's fibromyalgia.  However, while the ALJ's opinion does not cite to SSR 99-2p, the court is unaware of any

8

authority requiring an ALJ to specifically mention relevant Social Security Rulings when rendering a decision on an individual's claim for benefits. Additionally, SSR 99-2p deals with the requirements for finding chronic fatigue syndrome -- and arguably fibromyalgia[1] -- to be a medically determinable impairment. See SSR 99-2p, 1999 WL 271569, at *1. Since the ALJ found plaintiff's fibromyalgia to be a severe medically-determinable impairment, SSR 99-2p is irrelevant to the court's review of the ALJ's decision. Finally, plaintiff briefly suggests that had the ALJ properly considered SSR 99-2p he would have been forced to further consider "possible medical equivalency to a listed impairment." (Pl.'s Mot. for Summ. J. at 14.) However, plaintiff has not offered any theory as to how her alleged impairments combine to equal a listed impairment. Therefore, any argument that the ALJ erred by failing to consider the combined effects of her impairments is unpersuasive. See Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001)("The ALJ did not discuss the combined

---

[1] SSR 99-2p, which is titled "Titles II and XVI: Evaluating Cases Involving Chronic Fatigue Syndrome (CFS)," primarily concerns chronic fatigue syndrome but recognizes the following in a footnote:

> There is considerable overlap of symptoms between CFS and Fibromyalgia Syndrome (FMS), but individuals with CFS who have tender points have a medically determinable impairment. Individuals with impairments that fulfill the American College of Rheumatology criteria for FMS (which includes a minimum number of tender points) may also fulfill the criteria for CFS. However, individuals with CFS who do not have the specified number of tender points to establish FMS, will still be found to have a medically determinable impairment.

SSR 99-2p, 1999 WL 271569, at *3 n.3

effects of Lewis's impairments, or compare them to any listing.... [H]owever, Lewis has offered no theory, plausible or otherwise, as to how his seizure disorder and mental retardation combined to equal a listed impairment."); see also Burch v. Barnhart, 400 F.3d 676, 682-83 (9th Cir. 2005) (claimant did not carry his initial burden of proving that she had a combination of impairments that meet or equal the criteria of a listed impairment).

For these reasons, the court finds plaintiff's contention regarding SSR 99-2p unavailing.

Plaintiff's next contention is that the ALJ did not adequately consider all of plaintiff's nonexertional limitations. More specifically, plaintiff asserts that the ALJ "failed to properly consider Plaintiff's nonexertional impairments of emphysema, depression and prescription medication side effects." (Pl.'s Mot. for Summ. J. at 16.) However, by not including those alleged impairments in plaintiff's list of severe impairments at step two of the sequential evaluation the ALJ indicated a finding that plaintiff's non-exertional impairments were not severe. See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996)("An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'"). Plaintiff does not clearly challenge the ALJ's step two analysis in this regard. In any event, substantial evidence supports the ALJ's finding that plaintiff's emphysema, depression and prescription medication side effects have a minimal effect on her ability to work.

For example, while Dr. McIntire noted a question of chronic obstructive pulmonary disease in taking plaintiff's history (Tr. at 199), his only diagnosis was "question mild fibromyalgia" (Tr. at 203). He found no functional limitations in connection with any breathing problems, including but not limited to no environmental limitations.[2] (Tr. at 203-04.) Examining psychologist Rajinder Randhawa, M.D. found that plaintiff simply "does not have any vegetative signs or symptoms of depression that is compromising in her ability to be gainfully employed at present." (Tr. at 197.) Finally, with respect to plaintiff's suggestion that she suffers from the side effects of prescription medication, there is a dearth of evidence in the record. Further, plaintiff's own treating physician, Dr. Barger, merely noted that plaintiff experienced "mild drowsiness, occas[ional] dizziness" in this regard. (Tr. at 294.) For these reasons, plaintiff's argument regarding the ALJ's failure to adequately consider her emphysema, depression and prescription medication side effects must be rejected.

Turning to plaintiff's credibility argument, it is well-established that the determination of credibility is a function of

---

[2] Based on their review of plaintiff's records, the nonexamining state agency physicians opined that plaintiff should avoid "concentrated exposure" to fumes, odors, dusts and the like. (Tr. at 209, 221.) However, the ALJ appropriately rejected this limitation because the nonexamining state agency physicians' opinions were "entirely at odds with the findings of the consultative neurologist, are not corroborated by any objective clinical findings and were prepared by two doctor's [sic] who did not even exam[ine] the claimant." (Tr. at 16.) See Lester, 81 F.3d at 831 ("The opinion of a nonexamining physician cannot by itself constitute substantial evidence ....").

11

the ALJ, acting on behalf of the Commissioner.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  An ALJ's assessment of credibility should, in general, be given great weight.  Nyman v. Heckler, 779 F.2d 528, 530-31 (9th Cir. 1985).  Thus, questions of credibility and resolution of conflicts in the testimony are functions solely of the Commissioner.  Morgan, 169 F.3d at 599.  In evaluating a claimant's subjective testimony regarding pain and the severity of his or her symptoms an ALJ may consider the presence or absence of supporting objective medical evidence along with other factors.  See Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991); see also Smolen, 80 F.3d at 1285.  Ordinary techniques of credibility evaluation may be employed, and the adjudicator may take into account prior inconsistent statements or a lack of candor by the witness.  See Fair, 885 F.2d at 604 n.5.

Nonetheless, an ALJ's rejection of a claimant's testimony must be supported by specific findings.  Morgan, 169 F.3d at 599; Matthews v. Shalala, 10 F.3d 678, 679 (9th Cir. 1993)(citing Miller, 770 F.2d at 848).  Once a claimant has presented evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of his or her symptoms merely because the testimony is unsupported by objective medical evidence.  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Chater, 119 F.3d 789, 792 (9th Cir. 1997).  Rather, "the ALJ can reject the claimant's testimony about the severity of [his or] her symptoms only by offering specific, clear and convincing reasons for doing so."  Light, 119 F.3d at 792.  See also Reddick, 157 F.3d at 722.

Here, plaintiff's medical records document conditions which might reasonably be expected to cause the symptoms alleged by plaintiff.  However, while plaintiff alleges that she is totally unable to work due to the severity of her symptoms stemming from her fibromyalgia, the ALJ made specific and detailed findings in not fully crediting plaintiff's testimony.  While the court will not recount all of the ALJ's findings, the ALJ accurately characterized the record in noting that plaintiff's fibromyalgia has been assessed as mild to moderate in severity by more than one physician, including her treating physician.  (Tr. at 203, 260, 274.)  Plaintiff's mild to moderate fibromyalgia also has been managed somewhat successfully with medications.  (Tr. at 254, 260, 274.)  According to her own testimony, plaintiff has only received occasional treatment for her fibromyalgia.  (Tr. at 307-08.)  Many of her treating notes reflect office visits for entirely different reasons, such as high blood pressure, bronchitis, chronic obstructive pulmonary disease, colds and gynecological and dermatological reasons.  (See, e.g., Tr. at 245-47, 250-51, 253, 258-59, 262, 265-66, 268-70, 289-90.)

The ALJ also found plaintiff less than credible due to the findings of Dr. McIntire and Dr. Randhawa who found plaintiff capable of performing the physical and mental demands of work.  (Tr. at 194-98, 199-204.)

The ALJ also accurately observed that plaintiff is able to engage in a variety of daily activities.  (Tr. at 197, 199, 312-14, 316-18, 320.)  In this regard, evidence in the record establishes that plaintiff awakes at a normal hour, performs household chores

including laundry, vacuuming and scrubbing floors, does yard work, goes grocery shopping, drops off and picks up her children at school and cooks meals, although she asserts that she cannot engage in such activities without becoming very tired. (Id.)  The court recognizes that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." See Reddick, 157 F.3d at 722.  However, the extent of plaintiff's daily activities, particularly when considered in combination with the other evidence cited above, is probative of her ability to perform work.  See Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995).

     For these reasons the court finds that the ALJ fairly characterized the record and sufficiently stated specific, clear and convincing reasons for not fully crediting plaintiff's testimony regarding the severity of her symptoms.  See Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998).  Plaintiff's argument to the contrary must be also rejected.

**CONCLUSION**

     Accordingly, IT IS HEREBY ORDERED that:

     1.  Plaintiff's motion for summary judgment is denied;

     2.  Defendant's cross-motion for summary judgment is granted; and

     3.  The decision of the Commissioner of Social Security is affirmed.

DATED: September 21, 2005.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:th
Ddad1\orders.socsecmccray1178.order